[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14081

_____

D.C. Docket No. 3:14-cr-00073-MJG-JRK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MITCHELL HOLLAND,

Defendant - Appellant.

_____

No. 16-10039

_____

D.C. Docket No.  3:14-cr-00073-MJG-JRK-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WARREN ROSENFELD,

                                    Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(January 16, 2018)

Before MARCUS and NEWSOM, Circuit Judges, and MOORE,[*] District Judge.

PER CURIAM:

Appellants Mitchell Holland and Warren Rosenfeld were convicted on multiple counts of wire fraud and conspiracy to commit wire fraud.  In these consolidated appeals, they raise a total of eight issues in connection with their convictions and sentences.  Finding no reversible error, we affirm.

# I

## *A. The offense conduct*

In April 2014, a federal grand jury returned an indictment charging Holland and Rosenfeld, along with two other defendants, with 17 counts related to a longstanding wire-fraud scheme.  Specifically, the indictment charged Holland with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§

---

[*] The Honorable William T. Moore Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

2

1349 and 1343 and eight counts of wire fraud in violation of 18 U.S.C. § 1343.
The indictment charged Rosenfeld with one count of conspiracy to commit wire
fraud and three counts of wire fraud.

More particularly, the indictment alleged as follows.  Beginning around June
2009, Holland and Rosenfeld participated in a fraudulent scheme to "lease" fake
certificates of deposit (CDs) and "proof of funds" letters to borrowers unable to
obtain traditional forms of financing.  Holland and Rosenfeld convinced their
clients that the leased CDs and proof-of-funds letters could be used to obtain loans
or other financing, either as collateral or otherwise.  Once an agreement was
reached, Holland and Rosenfeld obtained fraudulent financial documents from
Unistate, a shell corporation purporting to be a financial institution headquartered
in New Zealand.

Each client paid an "arrangement fee" of between $150,000 and $622,500
for Holland and Rosenfeld to secure a leased financial instrument, which would be
held in the client's name for 60 days.  Theoretically, this initial arrangement fee
was to be kept in escrow for five days after provision of the leased instrument to
allow time for the client to receive a refund should the documents prove
unsatisfactory.  In practice, though, Holland and Rosenfeld never waited the full
five-day period before requesting disbursement.  The arrangement fee was divided
among the scheme's participants.  At the end of the 60-day period, the client could

extend the lease for up to a year by paying another much larger fee, ostensibly with

funds obtained through use of the leased documents.[1]  Not a single client ever paid

this second fee, likely because none were able to use the fake documents in any

way.

### B. Pre-trial motions and notices

Before trial, the parties filed several motions and notices that are relevant to

this appeal.

First, the government filed a notice of intent to introduce Fed. R. Evid.

404(b) evidence regarding seven transactions not charged in the indictment,

including three that occurred prior to the period of the conspiracy alleged in the

indictment.  Holland and Rosenfeld objected, arguing that the uncharged

transactions were not similar factually, that they would lead to guilt by association,

and that the risk of unfair prejudice outweighed the evidence's probative value.

The government responded that the uncharged transactions were inextricably

intertwined with the charged conduct and were thus outside Rule 404(b)'s scope

altogether and, alternatively, that the transactions should be admitted under Rule

---

[1]According to the indictment, Holland and Rosenfeld executed this scheme against individual victims in the following way: Dwight Jenkins received a fraudulent $10 million "CD and Proof of Funds Account" for a $150,000 arrangement fee; George Sayar received a $200 million "leased CD" for an initial fee of $622,500; Justin Nemec received a $4 million "leased CD" for an initial payment of $375,000; Brian Winum received a $100 million "leased CD" in exchange for an initial payment of $300,000; Ronald Sapp received a $100 million "leased CD" for an initial arrangement fee of $400,000; and Aurora Asset Management, LLC received a $100 million "leased CD" for an initial fee of $450,000.  The victims were led to believe they could monetize the leased instruments, but were unable to do so.

404(b) to establish intent, plan, knowledge, and absence of mistake.[2]  The court

admitted the evidence on the ground that the transactions were inextricably

intertwined with the charged conduct.

Second, Holland and Rosenfeld designated James Bradley as an expert

witness and provided his expert report and curriculum vitae.  The government

moved *in limine* to exclude Bradley's testimony on the grounds that he did not

meet Fed. R. Evid. 702's requirements for an expert and that he had

misrepresented his qualifications and credentials in his CV and report.  The

government further claimed that Bradley's expert report amounted to nothing more

than an opinion on the defendants' *mens rea*, rather than proper expert opinion.

Rosenfeld responded by "retract[ing Bradley's] expert designation" and noting his

intent to call Bradley as a fact witness instead.

Finally, the government noted its intent to seek forfeiture totaling

$9,151,978 and asserted that if it were unable to obtain property traceable to the

crime, it would be entitled to substitute property.  The government also filed a bill

---

[2]The government's trial brief summarized the additional deals as follows: Symtech International was to receive a $100,000,000 "sub account" for an initial deposit of $649,965; Magmetal Industries received a $10,000,000 "account" for an initial deposit of $475,000; Superstition Funding received a $3,000,000 "verification of deposit" for an initial deposit of $82,500; Dwight Jenkins (second deal) received a $20,000,000 "proof of funds account" for a $600,000 arrangement fee; Bentley Equities, LLC received a $25,000,000 "account" for a $300,000 arrangement fee; Progressive Funding Solutions, LLC received a $50,000,000 "leased CD" for a $450,000 arrangement fee; and Promotora Inmobiliaria received a $100,000,000 "leased stand by letter of credit" for a $5,507,500 arrangement fee.

of particulars notifying Rosenfeld that it would seek forfeiture of his house upon

conviction.

### *C. The trial and verdicts*

At trial, the district court ruled that it would not allow Bradley to testify as

an expert witness.  The court concluded that the opinions contained in Bradley's

expert report amounted to nothing more than his opinion that "the jury should find

these folks not guilty," which the court found inadmissible.  The district court did,

however, allow the defense to proffer Bradley's testimony outside the jury's

presence to determine his acceptability as a lay witness.  During the proffer,

Bradley stated that he knew both Holland and Rosenfeld but had not participated in

any of the transactions at issue in this case.  Rosenfeld's attorney argued that

Bradley's experience provided him the personal knowledge required for admission

as a lay witness, stating as follows:  "The purpose for Mr. Bradley is … to explain

how the DTC operates because he actually knows. … He's not rendering an

opinion if he likes the way it operates.  He's not rendering an opinion if people

enjoy the way it operates.  He's going to explain how it actually operates."[3]  The

district court halted Bradley's initial proffer due to the jury's arrival.  When the

proceedings resumed, Rosenfeld's attorney decided to make the proffer himself

rather than have Bradley continue to testify.  During this proffer, Rosenfeld's

---

[3] The DTC referenced by Rosenfeld's attorney is the Depository Trust Company, the organization that clears financial transactions occurring in the United States.

counsel contended that Bradley could provide context by speaking about his personal experience in investment banking and in the "nontraditional side of investment, funding, and banking," where Bradley would testify leased instruments are indeed used. The district court ruled that Bradley's proffered testimony was "not fact testimony," but rather "opinion testimony," rendering Bradley inadmissible as a lay witness. For purposes of the record, Holland's attorney then stated Holland would "adopt" Rosenfeld's positions and "submit[ted] that we would be able to call Bradley as a fact witness or an expert witness." The district court restated its ruling that Bradley would not be allowed to testify.

The government proffered William Kerr as an expert witness on the types of transactions typically occurring in the financial world. Rosenfeld renewed the objection that he had made pre-trial, arguing that Kerr was unqualified to testify as an expert on "non-traditional financial transactions"—a euphemism for the transactions at issue here—and that Kerr's testimony would unreliably contradict the testimony of other witnesses. Holland's attorney joined Rosenfeld's objection. The district court admitted Kerr's testimony over Holland's and Rosenfeld's objections.

Rosenfeld testified in his own defense. During his testimony, he made statements that became the basis of an obstruction-of-justice-based sentence enhancement, discussed below. Among other things, during direct examination, he

claimed he had been "contacted by a Secret Service agent that was looking for expert witnesses." On cross-examination, the government inquired as to the nature of Rosenfeld's role as an expert witness. When asked where he testified as an expert, Rosenfeld could not clearly recall, but said he believed it was in the Eastern District of New York in Queens. When pressed further on the matter, Rosenfeld conceded that he did not testify in court, was not even in New York when the trial in question happened, and claimed that he only used the term "expert" on direct because he was answering questions about his industry in an interview with a federal prosecutor.

At the close of the government's case in chief, Holland and Rosenfeld each moved for judgment of acquittal, but their motions were denied. The motions were renewed before the case was submitted to the jury, and again denied.

After a 12-day trial, a jury convicted Holland and Rosenfeld on all counts. The district court then held a forfeiture hearing, at which the government traced a $273,666.73 payment Rosenfeld made to pay off the lien on his house to the fraudulent transactions for which he had just been convicted, and argued that the house should therefore be subject to forfeiture. The jury returned a special verdict finding Rosenfeld's house was property traceable to all four offenses of conviction.

### D. The sentences

Following conviction, both the government and the presentence investigation report calculated the loss attributable to Rosenfeld at $10,523,978, and the government sought restitution in that amount. The government also sought a forfeiture money judgment of $9,151,978. Rosenfeld objected to the inclusion of transactions not included in the indictment and argued that the "provable loss" attributable to him was only $2,297,500. The court held a sentencing hearing at which extensive arguments were made regarding the inclusion of each transaction in the loss calculation. Following the hearing, the district court issued written findings regarding loss amount and restitution, applying the full loss amounts for victims named in the indictment and adding loss amounts for two other victims not named in the indictment, settling on a total restitution amount of $3,812,077. The court also found Holland and Rosenfeld jointly and severally liable for a forfeiture money judgment in the same amount and entered a preliminary order of forfeiture for Rosenfeld's house based on the jury's special verdict. Rosenfeld filed a motion to stay forfeiture of his house pending final sentencing and expected appeal, which the court later granted.

Among other enhancements, Rosenfeld's presentence investigation report added a two-level increase for obstruction of justice based on Rosenfeld's misleading trial testimony that he had served as an expert for the government.

9

Rosenfeld asserted that his testimony was made in good faith, arguing that he never used the word "testify" on direct examination and had only answered the government's questions on cross.  The government argued that Rosenfeld deliberately attempted to deceive the jury into believing he had testified as an expert witness for the government, and the district court agreed.  Rosenfeld's resulting guidelines range was 87-108 months.  He was ultimately sentenced to 60 months imprisonment followed by three years of supervised release in addition to the $3,812,077 restitution amount, the forfeiture money judgment in the same amount, and the forfeiture of his house.  Holland, jointly and severally liable with Rosenfeld for the restitution amount and the forfeiture money judgment, was sentenced to 48 months imprisonment followed by three years supervised release.  This appeal followed.

## II

As previously explained, Holland and Rosenfeld present eight issues arising from proceedings in the district court.  *First*, Holland argues that there was insufficient evidence to show that he acted with the requisite intent to sustain the jury's verdict.  *Second*, Holland and Rosenfeld contend the district court abused its discretion by admitting evidence of uncharged fraudulent transactions.  *Third*, Holland and Rosenfeld assert that the district court abused its discretion by allowing the government's expert to testify.  *Fourth*, Holland and Rosenfeld argue

that the court abused its discretion by refusing to allow their "key" witness to testify as either an expert or lay witness.  *Fifth*, Rosenfeld contends that the district court improperly calculated the forfeiture amount applicable to him.  *Sixth*, Rosenfeld asserts that the district court erred by not limiting the government's interest in his home to the mortgage payment shown to be tainted by the proceeds of the fraud.  *Seventh*, Rosenfeld argues that the imposition of both a money judgment and the forfeiture of his home violates the Excessive Fines Clause. *Finally*, Rosenfeld contends that the court erroneously imposed a two-level enhancement to his sentence for obstruction of justice in connection with his misleading testimony.

We address each issue in turn.

### A. The government produced sufficient evidence for a jury to conclude Holland acted with the requisite intent

We "review *de novo* a district court's denial of judgment of acquittal on sufficiency of evidence grounds … consider[ing] the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor."  *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013) (internal citation omitted).  We will not overturn a jury's verdict if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt.  *Id.*  The government may rely on circumstantial evidence to prove intent, but a conviction based on

circumstantial evidence "must be supported by reasonable inferences, not mere speculation." *Id*.

"[I]n order to support a conviction for wire fraud, the evidence at trial must show that a defendant (1) intentionally participated in a scheme or artifice to defraud another of money or property, and (2) used or caused the use of wires for the purpose of executing the scheme or artifice." *Id*. "Similarly, in order to sustain a conviction for conspiracy to commit wire fraud, the government must prove that the defendant knew of and willfully joined in the unlawful scheme to defraud." *Id*. (internal quotation omitted). Thus, in order to support Holland's convictions, the government must prove Holland acted with the intent to defraud. *See United States v. Bradley*, 644 F.3d 1213, 1239 (11th Cir. 2011). In our Circuit, however, "[a] jury may infer an intent to defraud from the defendant's conduct," *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009), and the fact that Holland personally profited from the fraud "may provide circumstantial evidence of [his] intent to participate in that fraud," *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011).

The government produced more than sufficient evidence that Holland acted with intent to defraud. The "financial documents" that Holland provided his clients contained several obvious signs that they were fake. Each of the CDs leased between 2008 and 2010 purported to issue from "Chase Manhattan Bank

British West Indies"—a bank that has not existed at all since 2000 and, even when

it did exist, never had a branch in the British West Indies.  Identifying information

on the screenshots of the leased instruments sent to clients as proof of the funds'

existence did not follow proper clearinghouse format.  In addition to providing the

obviously fake instruments to his clientele, Holland consistently told his clients

that the leased instruments could be used as collateral for loans, even though he

knew that none of his customers had been able to use a leased instrument in any

way.  When one client complained about his inability to confirm a "blocked funds"

letter from Citibank El Salvador, Holland told him the account had been closed

because someone had tried to withdraw money from the account—a statement that

could not possibly have been true since the account was a fake.  Finally, Holland

personally profited from the fraud, which the jury was free to consider as

circumstantial evidence that he intended to participate.  In short, there was more

than enough evidence that Holland intended to participate in the fraud as charged.

The district court correctly denied his motion for judgment of acquittal.

### B. The district court did not abuse its discretion in admitting evidence of uncharged similar conduct

This Court reviews a district court's decision to admit evidence of uncharged

offenses for abuse of discretion.  *United States v. Ford*, 784 F.3d 1386, 1392 (11th

Cir. 2015).  "Determinations regarding the admissibility of evidence rest largely

with the sound discretion of the trial court and will not be disturbed on appeal

absent a clear showing of abuse of discretion." *United States v. Muscatell*, 42 F.3d 627, 630 (11th Cir. 1995).

This Court "repeatedly has held that evidence of uncharged conduct that is part of the same scheme or series of transactions and uses the same *modus operandi* as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b)." *Ford*, 784 F.3d at 1394. "[E]vidence of such criminal conduct falls outside the scope of Rule 404(b), and thus is independently admissible, if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense[s], (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense[s]." *Id*. at 1393 (internal quotation omitted).

Separately, under Rule 404(b), evidence of uncharged conduct is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In this Circuit, for evidence to be admissible under Rule 404(b), "(1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403." *Ford*, 784 F.3d at 1393.

The district court did not abuse its discretion in determining that the uncharged-transactions evidence was "inextricably intertwined" with the charged offenses and represented portions of an overall fraudulent scheme.  The charged offenses were not isolated acts, but rather parts of a series of transactions involving Holland and Rosenfeld acting in the same roles (although with a new supplier of fraudulent documents) and employing the same *modus operandi*.  *See Muscatell*, 42 F.3d at 630-31 (evidence of related acts admissible even though occurring prior or subsequent to charged offenses).

Alternatively, the evidence was admissible under Rule 404(b) as proof of Holland's and Rosenfeld's intent with regard to the charged transactions.  First, intent is material in a wire fraud case when a defendant pleads not guilty.  *See United States v. Barrington*, 648 F.3d 1178, 1186 (11th Cir. 2011).  Second, the government produced evidence that Holland and Rosenfeld participated in each transaction and that each document was fraudulent.  It was therefore reasonable for the jury to conclude Holland and Rosenfeld committed the acts admitted.  As to the third prong, "[a] similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense."  *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).  The similarities between Holland's and Rosenfeld's earlier acts and the charged offenses are obvious—particularly in that each involved passing on useless fake

financial documents in return for a large "initial deposit." The district court was

therefore within its discretion to admit the evidence under either theory, and we

will not disturb its decision.

### C. The district court did not abuse its discretion in admitting William Kerr's expert testimony

We review a district court's decision to admit or exclude an expert for abuse

of discretion. *United States v. Azmat*, 805 F.3d 1018, 1041 (11th Cir. 2015). "We

have explained that district courts must analyze three factors in determining the

admissibility of expert testimony under Rule 702: the expert's qualifications, the

reliability of the testimony, and the extent to which the testimony will be helpful to

the trier of fact." *Id*. (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th

Cir. 2004). "While scientific training or education may provide possible means to

qualify, experience in a field may offer another path to expert status." *Frazier*, 387

F.3d at 1260-61.

The district court did not abuse its discretion by admitting Kerr as an expert

witness. Kerr worked for 39 years in the Office of the Comptroller of Currency,

including 12 years in the Office's offshore banking and fraud section. Since 2007,

he has worked as a banking and financial-fraud consultant, and has been qualified

as an expert witness in federal court approximately 70 times on related issues. His

experience more than qualified him to speak on the matters at hand. *Frazier*, 387

F.3d at 1261. Furthermore, the fact that Kerr's testimony contradicted that of other

witnesses in no way disqualifies him as an expert.  These contradictions affect only

the credibility of Kerr's testimony, not its admissibility.  *See United States v.*

*Pearson*, 791 F.2d 867, 871 (11th Cir. 1986).  The jury was free to weigh Kerr's

credibility as it saw fit.  The district court therefore did not abuse its discretion in

admitting Kerr's expert testimony.

### D. The district court did not abuse its discretion by excluding the testimony of James Bradley

As just explained, we review a district court's decision to admit or exclude

an expert's testimony only for abuse of discretion.  *Azmat*, 805 F.3d at 1041.

"[T]he deference that is the hallmark of abuse-of-discretion review, requires that

we not reverse an evidentiary decision of a district court unless the ruling is

manifestly erroneous."  *Frazier*, 387 F.3d at 1258 (internal citation and quotation

omitted).  "Proffered expert testimony generally will not help the trier of fact

when it offers nothing more than what lawyers for the parties can argue in closing

arguments."  *Id*. at 1262-63.  Here, the court ruled that Bradley's testimony would

not be helpful to the jury because the opinions contained within his report merely

stated Bradley's beliefs regarding Holland's and Rosenfeld's guilt.  An

independent reading of Bradley's report does not indicate the district court erred,

let alone manifestly so.  We therefore find no basis to reverse the district court's

decision.

Nor did the court abuse its discretion by refusing to admit Bradley as a lay witness. Rosenfeld attempts to circumvent Bradley's lack of personal knowledge related to the specific facts of this case by claiming that Bradley would have testified only to facts of which he has personal knowledge gained from his experience in the field of alternative finance. We think, however, that the testimony proffered by both Bradley's and Rosenfeld's counsel is rightly viewed as expert testimony beyond the scope allowed a lay witness. As Rosenfeld himself notes, the distinction between a lay and expert witness is that "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701 Advisory Committee's Note-2000 Amendment. It is true, of course, that a lay witness who has personally used a particular financial instrument could be permitted to testify that such an instrument exists. But Holland and Rosenfeld sought to elicit testimony from Bradley going far beyond such a basic assertion. Rather than simply recounting his own use of "leased" CDs, Bradley's proffered testimony focused on how banks and other lending institutions may view such instruments. Rosenfeld wanted Bradley to testify as to how the DTC operates, and how the financial instruments at issue here could be used within the DTC network. Such testimony clearly has its genesis in "a process of reasoning which can be mastered only by specialists in a field" and is therefore

best reserved for a properly qualified expert witness.  At a minimum, the district court did not abuse its discretion in so concluding.

### *E. The district court did not err in calculating the forfeiture money judgment against Rosenfeld*

Rosenfeld argues that "the district court erred by ordering the forfeiture of funds related to uncharged conduct and by failing to make findings as to what proceeds were received by Rosenfeld or [his] co-conspirators."  Br. of Rosenfeld at 42.  We review the district court's legal conclusions regarding forfeiture *de novo* and its findings of fact for clear error.  *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1340 (11th Cir. 2009).

The district court did not err by ordering Rosenfeld to forfeit funds linked to uncharged conduct.  When a defendant is convicted of a criminal offense for which civil forfeiture is authorized, the court shall "order the forfeiture of … property as part of the sentence in the criminal case."  28 U.S.C. § 2461(c).  The civil forfeiture statute authorizes forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of … any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."  18 U.S.C § 981(a)(1)(C).  Section 1956's definition of "specified unlawful activity" includes wire fraud.  18 U.S.C. § 1956(c)(7)(A) (including within the definition of "specified unlawful activity" any act constituting an offense listed in § 1961(1), which includes wire fraud).

The elements of forfeiture must be proven by a preponderance of the

evidence. *United States v. Hasson*, 333 F.3d 1264, 1277 (11th Cir. 2003); *see also*

*United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997) (district court was

free to consider acquitted conduct at sentencing as long as government proved

acquitted conduct by preponderance of the evidence).  Rosenfeld's argument that

none of the uncharged conduct was proven beyond a reasonable doubt, therefore, is

beside the point.  In addition, we have previously held that a jury may consider

both acquitted and uncharged conduct when determining a forfeiture amount.

*Hasson,* 333 F.3d at 1279.  In *Hasson*, the defendant was convicted of wire fraud

and conspiracy to launder the proceeds of mail and wire fraud, but was acquitted

on mail fraud charges.  *Id*. at 1279-80.  The court nonetheless allowed the jury to

consider evidence of the acquitted mail-fraud conduct, as well as uncharged

conduct, when determining which properties would be forfeitable under the

criminal forfeiture statute.  *Id*. at 1277-79 ("The jury was free to … consider

evidence of … wire frauds adduced by the government in support of the money

laundering count, though not charged as separate substantive counts.").  Though

*Hasson* involved the criminal forfeiture statute rather than the civil, we see no

reason the same logic would be in applicable here.

Although he does so now, Rosenfeld did not previously object to the district

court's forfeiture calculations based on a supposed failure to make findings about

possession of proceeds.  We therefore review only for plain error.  *United States v. Sosa*, 777 F.3d 1279, 1294 (11th Cir. 2015).  "To demonstrate plain error, the defendant must show that there is (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (internal quotations omitted).

Where there is no precedent from the Supreme Court or this Court directly resolving an issue, there can be no plain error where the text of a statute or rule does not explicitly resolve it.  *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).  The statutes at issue in this case, 18 U.S.C. §§ 981(a)(1)(C) and 2461(c), do not explicitly require the district court issue findings regarding possession of proceeds, nor does a published case from this Court or the United States Supreme Court.  Accordingly, we find no plain error.

### F. The district court did not plainly err by failing to limit the government's interest in Rosenfeld's house

Rosenfeld failed to object to the forfeiture of his entire interest in his house.  Therefore, again, we review only for plain error.  *Sosa*, 777 F.3d at 1294.

Rosenfeld argues that only the amount he wired to pay off his mortgage in December 2009 should have been subject to forfeiture because it was the only payment on the house the government showed was made with tainted funds.  The government does not fundamentally dispute Rosenfeld's contention, but it nonetheless argues that he is not entitled to relief on plain-error review, and further

contends that any error is harmless because it may simply substitute the remainder of the interest in the home to satisfy the money judgment entered against Rosenfeld.

We find no case law directly addressing this particular issue before us, and we do not believe that the statute clearly and unambiguously resolves the question. Because there is no binding precedent directly on point, we save for another day the question whether the government's interest should have been limited to the amount traceable to the proceeds of the fraud. We hold only that the district court did not plainly err in this instance.

### G. The district court's forfeiture order does not violate the Excessive Fines Clause

Rosenfeld contends that allowing dual forfeitures, in this instance the forfeiture money judgment and the forfeiture of his home, violates the Eighth Amendment's Excessive Fines Clause and constitutes impermissible double-counting.

Rosenfeld did not object to the forfeiture of his house in addition to the money judgment. Accordingly, we review only for plain error. *Sosa*, 777 F.3d at 1294. A forfeiture order imposed at end of a criminal proceeding due to a conviction constitutes a fine subject to the Excessive Fines Clause. *United States v. Seher*, 562 F.3d 1344, 1371 (11th Cir. 2009). But a forfeiture order constitutes

an excessive fine only "if it is grossly disproportional to the gravity of defendant's offense." *Id*.

Double-counting alone does not render a fine excessive. *See United States v. Sperrazza*, 804 F.3d 1113, 1128 (11th Cir. 2015). In addition, we have previously held it permissible for a district court to order forfeiture of specific property even when there was a separate money judgment. *See United States v. Chaplin's Inc.*, 646 F.3d 846, 854-55 (11th Cir. 2011). Although Rosenfeld's total fine exceeds the statutory maximum for his offense by 431%, such an increase does not on its own render a fine "grossly disproportionate" in violation of the Excessive Fines Clause. *Cf. Chaplin's Inc.*, 646 F.3d at 854-55 (fine exceeding statutory maximum by 33.3% and guideline maximum by 53.8% not excessive); *see also United States v. Castello*, 611 F.3d 116 (2nd Cir. 2010) (4,805.17% increase not excessive). Because no binding precedent made it clear that an increase of 431% over the statutory maximum renders a fine excessive, we are constrained to hold that the district court did not plainly err.

### H. The district court did not err by imposing a sentence enhancement for obstruction of justice when calculating Rosenfeld's Sentencing Guidelines range

When reviewing a district court's imposition of an enhancement for obstruction of justice this Court reviews factual findings for clear error and application of the findings to the sentencing guidelines *de novo*. *United States v.*

*Perkins*, 787 F.3d 1329, 1341 (11th Cir. 2015).  We do not disturb factual findings

under the clear-error standard unless we are left with a definite and firm conviction

that a mistake has been made.  *United States v. Rothenberg*, 610 F.3d 621, 624

(11th Cir. 2010).

A two-level sentence enhancement for obstruction of justice is appropriate

when "the defendant willfully obstructed or impeded, or attempted to obstruct or

impede, the administration of justice with respect to the investigation, prosecution,

or sentencing of the instant offense of conviction."  U.S.S.G. § 3C1.1.  Perjury is

an example of obstructive conduct.  U.S.S.G. § 3C1.1 cmt. n.4(B).

This Court requires a district court applying an obstruction-of-justice

enhancement to explain what the defendant did, why that conduct warranted the

enhancement, and how that conduct actually hindered the investigation or

prosecution of the offense.  *United States v. Alpert*, 28 F.3d 1104, 1107-08 (11th

Cir. 1994) (en banc).  Here, the district court issued written findings on the

enhancement noting that both it and the jury were misled by Rosenfeld's

testimony.  We give special deference to the district court for these types of

decisions.  *See United States v. Williams*, 340 F.3d 1231, 1240 (11th Cir. 2003)

("An appellate court is not in a position to assess a defendant's demeanor, apparent

sincerity, intonation, expression, gesticulations, and a wide range of other

considerations that are pertinent in determining whether he has perjured himself.").

We find no basis on which to reverse the district court here.

### III

Having found no reversible error, we **AFFIRM** the district court in all respects.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 16, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-14081-BB   ; 16-10039 -BB
Case Style:  USA v. Mitchell Holland
District Court Docket No:  3:14-cr-00073-MJG-JRK-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF")
system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal.
Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in
accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition
for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for
inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office
within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing,
format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2
and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a
complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See
11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for
rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for
time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme
Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA
Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the
eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the
signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion